## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

WARREN LESTER, ET AL.                               CV. NO. 06-9158

versus                                             SECT. "L"; MAG. 2

Exxon-Mobil CORPORATION, CHEVRON USA, INC.,
INTRACOSTAL TUBULAR SERVICES, INC., ALPHA
TECHNICAL SERVICES, INC., ET AL.                   JURY TRIAL
                                                   REQUESTED

*************************************************************************

### <u>MEMORANDUM IN SUPPORT OF MOTION TO REMAND</u>

MAY IT PLEASE THE COURT:

Plaintiffs in this matter, Warren Lester, et al., have, timely and rightfully, moved the Court

to remand this case to the Civil District Court for the Parish of Orleans. Humble Incorporated

improperly removed this case allegedly pursuant to 28 U.S.C. 1453, the Class Action Fairness Act

of 2005. This case should be remanded for four reasons. First, this case is not removable under the

Class Action Fairness Act, because this case does not meet the legally mandated definition of a

"mass action" as required under the Class Action Fairness Act (hereinafter "CAFA"), as it has been

divided into groups of claims to be tried jointly in numerosity below 100 per group by state court

admissions of defendants and stipulation of plaintiffs. 28 U.S.C. 1332(d)(11)(B)(i). Second, with

its extant facts, this case is specifically legally excluded from consideration as a removable mass

action under CAFA because its many claims have been coordinated for solely pre-trial proceedings

only. 28 U.S.C. 1332 (d)(11)(B)(iv). Third, this case is not removable under CAFA because the joinder of new alleged non-diverse defendants which would, purportedly, permit removal, has never been accomplished, and is not presented nor ripe for such consideration. Thus, a **new removable** action has never been commenced, giving birth to CAFA's prerequisite for removal. Fourth, CAFA is an unconstitutional infringement on state's rights and should be struck down as unconstitutional. Accordingly, operation of CAFA for removal of this case was an unconstitutional violation of the 10th Amendment of the United States Constitution and this case should be remanded. For these reasons, this case should be remanded to the Civil District Court for the Parish of Orleans. As this was a bad faith removal, plaintiffs pray that the court sanction Humble Incorporated for the frivolous removal of this case.

## Factual and Procedural Background

This case was originally filed in Civil District Court on December 20, 2002. Exhibit 1. The petition was not filed for a class, rather it was filed for individual claimants against individual defendants.[1] Subsequently, numerous supplemental and amending petitions were filed which joined and dismissed various defendants and added plaintiffs. On September 28, 2006, plaintiffs filed a Motion for Leave to File a Seventh Supplemental and Amending Petition. Exhibit 2. With the Seventh Supplemental and Amending Petition, plaintiffs sought to join as additional defendants, Humble Incorporated, Bredero Price, Inc. and Bredero Price Company, in addition to several new plaintiffs. The Motion for Leave was set for hearing on December 1, 2006, by the Civil District

---

[1]     Humble Incorporated has removed this case, contending it is a mass action. Notice of Removal, p. 3. Humble makes no allegation that this case is a class action. Nor has this case been filed under any class action statute, nor has it been certified as a class action. Thus, it does not qualify as a removable class action under CAFA. See 28 U.S.C. 1332(d)(1)(B) and (C).

Court. See Exhibit 3. The Motion for Leave to file the Seventh Supplemental and Amending Petition **was never granted**. Meanwhile, this case was removed based solely upon the Seventh Supplemental and Amending Petition. Thus, Humble Incorporated, Bredero Price, Inc. and Bredero Price Company are not yet proper parties to this litigation. Louisiana Code of Civil Procedure Arts. 421 and 1033.

Plaintiffs in this action are approximately 650 plus persons who were exposed to poisonous radiation associated with the cleaning of used oilfield pipe at various pipe yards. Defendants in this action are approximately 17 oil companies, 10 pipe yards and 5 land owners. By defendants' count, this exposure would have taken place in "14 states, numerous cities, towns and municipalities within those states, and numerous offshore locations off the coasts of some of those states . . . [and, also] other countries." Exhibit 4, p. 5, Certain Defendants' Supplemental Memorandum in Support of Dilatory Exception of Improper Cumulation filed in Civil District Court. Exhibit 9, ¶5, Affidavit of Timothy J. Falcon, lead attorney for the Lester plaintiffs.

Some of the plaintiffs suffered personal exposure because they worked at pipe yards. Some of the plaintiffs were exposed because their residences were near pipe yards. Out of the 650 plus plaintiffs, over 60 have documented diagnoses of various forms of cancer.

In the State Court proceedings which have been going on nearly four years, the defendants excepted to the cumulation of the plaintiffs' claims in a single lawsuit. The defendants have vigorously alleged the individual plaintiffs' claims were improperly cumulated. Included in those defendants excepting to improper cumulation was Exxon-Mobil. Exhibit 4, pp. 1, 10. Exxon-Mobil is represented by the same attorneys who now also represent the remover, Humble Incorporated. id. at p. 10. Exhibit 5, *en globo*, the Kentucky Secretary of State reports for Humble, Exxon-Mobil

3

and Mobil Corporation. Interestingly, Humble Incorporated and Mobil Corporation share the same officers and directors and business address. Exhibit 5, pp. 1, 5. Also of interest is that Exxon-Mobil Corporation and Humble Incorporated share the same exact street address and room number for their principal offices in Houston, Texas. *id.*, pp. 5, 6.

Exxon-Mobil, along with the other defendants, consistently argued to the State Court that the plaintiffs' claims in this case cannot be tried jointly. The reasons asserted for this were the alleged uniqueness of each of the individual plaintiffs' claims. As was stated in a brief on the exception of improper cumulation submitted by defendants, including Exxon-Mobil:

> At trial, defendants will present evidence, with regard to medical causation, with respect to each different disease process. And the jury will be asked to consider such medical testimony and evidence separately with respect to each individual. Asking a jury to keep what amounts to thousands of issues separate is an impossible task, then end result of which will be the blurring of each individual's claim. Each individual's case will become a generality, with the defendants' due process rights being violated in the process. Further, trying the cancer claims together with the claims of less serious (or no) injuries will unfairly prejudice defendants by the distinct possibility of higher damages awards from a jury that is inflamed by evidence of cancers. The same prejudicie will result if the jury is presented with punitive damages evidence in claims where punitive damages cannot be awarded. Add to this that there are more than 30 defendants with varying degrees of potential liability, if any, **and it is abundantly clear that these cases cannot be tried together**.

Exhibit 4 p. 9. Exxon-Mobil's attorneys argued even further of the inability to cumulate these cases to the State District Court during oral argument and in briefing on the improper cumulation exception. Admissions made by Humble/Exxon Mobile's attorneys are broken down by the reason given:

       --       Because of the differences in each plaintiff's exposure history:

"There are 710[2] plaintiffs who live in 9 different states involving 736 different sites in 14 different states (Exhibit 6 p. 37, ln. 24-7) , . . . The plaintiff worked in different yards and other states, the plaintiff worked in yards in Louisiana, some of the plaintiffs worked in both yards in Louisiana and other States (sic) some of the plaintiffs work overseas, some of the plaintiffs worked in only one yard . . . ." (Exhibit 6, p. 38, ln. 11-16).

--    Because of the wide diversity of injuries alleged:

". . .[S]ome of the plaintiffs had cancer, some of the plaintiffs had different types of cancer, some of the plaintiffs had no injury at all, some of the plaintiffs had generic complaints like sinus, some of the plaintiffs had specific complaints like diabetes." . . . (Exhibit 6, p. 38, ln. 17-21).

--    Because of causation issues unique to each plaintiff:

"Causation issues which are unique to each individual plaintiff (i.e. alternative environmental exposures such as, alcohol, tobacco, family health history, etc.) . . . The influence of other substances, such as cigarettes, heredity factors, environmental conditions, and other exposures to harmful contaminants will raise significant issues of causation peculiar to each plaintiff." (Exhibit 4, p. 6.)

--    Because of applicability of different laws to different claims:

". . .[S]ome of the plaintiffs had wrongful death action, some had survivor action, some have punitive damage actions, some do not have punitive damage action . . . [D]ifferent applicable laws depending upon where the site is. Depending on where the exposure is we may have a conflict of law issue . . . ." (Exhibit 6, p. 38, ln. 21-4, 27-8).

"[L]egal issues such as whether an individual plaintiff may be entitled to assert a claim for punitive damages will vary according to the years of each plaintiff's alleged exposure. . . Many plaintiffs do not have a cause of action for punitive damages because all of their alleged exposure occurred prior to 1984 while others allege exposure both before and after article 2315.3's effective date. These different periods of alleged exposure are relevant not only to punitive damages but also in assessing fault, apportionment, contribution, ultimate liability and so on." (Exhibit 4, p. 6).

---

[2]    The difference in the number of plaintiffs stated by plaintiffs herein and defendants in the citations is because of the removal of certain plaintiffs, including the 26 Harvey ITCO-Only plaintiffs from the calculation. The ITCO-Only plaintiffs were severed and transferred to another proceeding in the Louisiana 24th J.D.C.

--     Because of the difference in each plaintiff's radiation exposure:

      ". . . [S]ome have difference (sic) exposures, different levels, different times and duration . . . ."  Exhibit 6, p. 38, ln. 5-6).

      ". . . [O]ut of more than 700 plaintiffs in this case, only 26 claim a shared exposure location."  (Exhibit 4, p. 8)

      . . .[E]ven those who were exposed at the same location lack common exposure times and durations."  (Exhibit 4, p. 8)

--     Because of the geographic diversity and difference in radioactivity levels of the wells in which the oilfield pipe became radioactive, such as the difference between Mississippi and Louisiana:

      ". . . [T]he Mississippi pipe yard [] level of radium in the pipes on average in that yard was 6000 peco curies per gram . . . the level in the ITCO [Harvey, Louisiana] yard by actual measurements was 480 peco curies per gram because they came from different well oil wells in different parts of the country." (Exhibit 6, p. 42, ln. 24-30).

The State District Court was required to weigh all these factors in its determination of the improper cumulation issue.  The State District Court ultimately denied the exception of improper cumulation, which was upheld by the Fourth Circuit.  The state Supreme Court did not consider the writ application.  Exhibit 7, *en globo*.  The state courts determined that there was a sufficient community of interest in the cases that the cumulation should not be broken up.  Thus, the over 650 claims in this case can seemingly move forward in one cumulated action.  However, this does not mean, nor has it been proposed or considered that the more than 650, or even a number of claims remotely near 100, would be tried together.  Indeed, defendants have adamantly opposed, through Humble's attorneys, a single trial of as few as 26 claims.  Exhibit 9.

The State District Court also recognized that all of the greater than 650, nor any significant fraction thereof, could be tried jointly, i.e., in one trial.  Rather, the State District Court began, in 2004, culling out groups of cases to be tried together based upon the common feature of the location

of exposure.    Humble/Exxon-Mobil's attorneys repeatedly argued vehemently to the State District

Court that in this case there were over 700 exposure sites based on the plaintiffs' alleged exposures

which should prohibit the cumulation of any cases.  Exhibit 6, p. 38 (ln. 6, 29), p. 39 (ln. 3, 9), p. 40

(ln. 8), p. 46 (ln. 12, 13, 20).   Clearly, if cases cannot be cumulated, the certainly cannot be tried

together.

In any event, the State District Court severed an initial grouping of 43 plaintiffs, the "ITCO

Harvey Yard plaintiffs", or "Harvey ITCO-Only plaintiffs" as they are also known.  They were so

named because all their exposure was believed to have occurred at the Harvey, Louisiana pipe yard

of ITCO.[3]   See Exhibit 8, the State District Court's sever order.  This grouping was ultimately

reduced so that there are now only 26 Harvey ITCO-Only plaintiffs.[4]  The 26 Harvey ITCO-Only

plaintiffs remain the largest grouping to come from this litigation for trial purposes.  It is absolutely

the only grouping to which Exxon-Mobil has consented to group.

The cumulation of the rest of these cases has been conducted, to date, for pre-trial purposes

only. See Exhibit 9, ¶7. It has never been discussed between the parties, nor the parties and the State

District Court, that it would be appropriate, much less possible, to try more than 100 claims in a

single trial.  id., ¶13.   It has never been proposed, nor even suggested, that the claims in this case

could be tried in groups even approaching 100 claimants, much less exceeding it.  Rather, the largest

groups ever discussed, which may qualify as a proposal, other that the Harvey ITCO-only claims,

---

[3]       ITCO operated a large pipe yard in Harvey where oilfield pipe used by the oil
company defendants in this case was cleaned and stored.

[4]       The Harvey ITCO-Only plaintiffs were ultimately transferred to the 24th J.D.C. on
assented grounds of venue to which counsel for plaintiffs quit fighting to get that group moving
forward "somewhere" to get a trial date.

for joint-trial were groups of 15 plaintiffs only. *id.*, ¶12.

More concretely, there have only been two cases proposed for trial to take place on a specific date. Yet, even these proposed trials were undisputedly to be conducted separately. *id.* At a status conference with the State District Court on September 7, 2006, plaintiffs proposed to try the cases of Alvin Comeaux and Leon Lemon. *id.* It was requested that the court set these cases for trial at the soonest possible date because Messrs. Comeaux and Lemon were dying: Mr. Comeaux from chronic lymphocytic leukemia, and Mr. Lemon from leukemia. It was hoped that their cases could be tried before they died. The State District Court was receptive to the proposal, and suggested February 2007 could be used for trial dates. With the specter of these trials now looming, the filing of plaintiffs' Motion for Leave to File Seventh Supplemental and Amending Petition was erroneously exploited by Humble/Exxon-Mobil to remove the case allegedly under CAFA. Unfortunately, Mr. Comeaux did not make it to the February trial date. He died Tuesday, October 31, 2006, from the disease progression at the age of 52. With the removal of this case, it is unlikely that Mr. Lemon will get the February 2007 trial date offered by the state district court.

Thus, as shown above, when down at Poydras Street and Loyola Avenue (i.e., Civil District Court), Humble's attorneys stated to the state court that "these cases cannot be tried together." Exhibit 4, p. 9. But when they come up to Poydras and Camp, they aver, by filing a removal under CAFA, that 100 or more claims can be tried together. When it removed this case, Humble knew full well that the admissions made in the state court proceedings proved this case was not removable under CAFA. This conduct warrants the imposition of sanctions for improvidently removing this case.

## ARGUMENT

This case should be remanded to Civil District Court for the following reasons. First, Humble has removed this case under 28 U.S.C. 1453, the Class Action Fairness Act of 2005, referred to as "CAFA". Pursuant to CAFA, Humble has alleged that this case qualifies as a "mass action" under 28 U.S.C. 1332(d)(11)(B)(i). In order to be removable under CAFA, a case must meet the statutory definition of a "mass action". 28 U.S.C. 1332(d)(11)(A). The definition of a mass action is provided by 28 U.S.C. 1332(11)(B)(i), which requires that the action involve 100 or more claims which are "proposed" to be tried "jointly", i.e., in a single trial. It has never been proposed that 100 or more claims in this case be tried in one trial. Indeed, Humble's attorneys have repeatedly argued to the contrary. Humble/Exxon-Mobil's attorneys have consistently argued that this case has many diverse factual and legal issues which prevent the grouping of 100 or more claimants for a single trial.

Second, with its extant facts, this case is specifically excluded from being a removable mass action because its many claims have been coordinated for pre-trial proceedings only. 28 U.S.C. 1332 (d)(11)(B)(IV). Third , the removal of this case by Humble was improper under CAFA because Humble, and the other diverse defendants, were not yet joined as defendants in the state court action. Thus, there has been no commencement of a removable action as required by 28 U.S.C. 1453 and, therefore, the case was not removable. Fourth, CAFA unconstitutionally usurps the power of Louisiana state courts to apply and interpret Louisiana law in violation of the 10th Amendment. This case should be remanded to state court.

As a preliminary matter, plaintiffs address the assignment of burden of proof under on a remand motion in CAFA removed case. In a recent law review article, Judge Vance gives an

instructive assessment of the burden of proof related to remand under CAFA. 80 Tul. L. Rev.1617,

1637-41, *A Primer on the Class Action Fairness Act of 2005*. Judge Vance acknowledges that it was

the apparent intent of the majority of the Senate Judiciary Committee to place the burden of proof

on the party moving to remand. *id.* at 1637; citing S. Rep. 109-14, *supra*. Specifically, the Senate

Committee report stated:

> It is the Committee's intention with regard to each of these exceptions
> that the party opposing federal jurisdiction shall have the burden of
> demonstrating the applicability of an exemption. Thus, if a plaintiff
> seeks to have a class action remanded under section 1332(d)(4)(A) on
> the ground that the primary defendants and two-thirds or more of the
> class members are citizens of the home state, that plaintiff shall have
> the burden of demonstrating that these criteria are met by the lawsuit.
> Similarly, if a plaintiff seeks to have a purported class action
> remanded for lack of federal diversity jurisdiction under subsection
> 1332(d)(5)(B) (sic)[5] ("limited scope" class actions), that plaintiff
> should have the burden of demonstrating that "all matters in
> controversy" do not "in the aggregate exceed the sum or value of
> $5,000,000, exclusive of interest and costs" or that "the number of all
> proposed plaintiff classes in the aggregate is less than 100
> [per 1332(d)(5)(B)]."

S. Rep. 109-14, p. 44.[6]

---

[5]    The reference and quotation clearly relate to 1332(d)(6).

[6]    The Senate Committee's words were not impressive to Judge Easterbrook, of the
Seventh Circuit, as anything remotely authoritative:

> "This passage does not concern any text in the bill that eventually
> became law. When a law sensibly could be read in multiple ways,
> legislative history may help a court understand which of these
> received the political branches' imprimatur. But when the legislative
> history stands by itself, as a naked expression of "intent" unconnected
> to any enacted text, it has no more force than an opinion poll of
> legislators-less, really, as it speaks for fewer. Thirteen Senators
> signed this report and five voted not to send the proposal to the floor.
> Another 82 Senators did not express themselves on the question;
> likewise 435 Members of the House and one President kept their

Importantly, none of the examples given by the senate committee involve the statutory sections plaintiffs herein have cited in support of remand. Plaintiffs cite 1332(d)(11)(B)(i), and to show that CAFA does not apply because this is not a "mass action" within the statutory definition and 1332(d)(11)(B)(ii)(IV) to show that this case is specifically excluded from being a removable mass action. Plaintiffs' arguments go to the point that this case is not within the class of those cases which are removable mass actions as defined by CAFA. Conversely, the examples given by the Senate Committee address 28 U.S.C. 1332's requirement that federal courts decline to exercise their jurisdiction under CAFA in certain cases (see 28 U.S.C. 1332(d)(4) , "[a] district court shall decline to exercise jurisdiction . . . .") and that a district court's jurisdiction will not apply in certain other cases (see 28 U.S.C. 1332(d)(5), "[p]aragraphs (2) through (4) shall not apply to any class action which . . . ."). Thus, the Senate Committee, by its own examples,  would give party contesting federal jurisdiction the burden of proof only where jurisdiction exists, but to which there are exceptions to its exercise. Conversely, in this case, where this is not a mass action as defined by CAFA, federal jurisdiction never properly attached and the Senate Committee's guiding words do not put the burden of proof on plaintiffs.

Plaintiffs' other argument for remand is whether the plaintiffs' proposed amendment of the state court pleadings "commenced" a removable action under §9 of CAFA. See *Braud v. Transport Service Co. of Illinois*,  445 F.3d 801, 802 (5th Cir. 2006). Again, plaintiffs' argument is that there never was removal jurisdiction conferred by CAFA, thus the shifted burden referenced by the Senate Committee does not apply.  The statute contains no language shifting the burden. Thus, the burden

---

silence." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005).

of proof is on the removing party to establish federal subject matter jurisdiction.

Further, as Judge Vance points out, historically the burden has been on the removing party to show the propriety of federal subject matter jurisdiction. 80 Tul. L. Rev. at 1638. Also, a growing number of courts are placing the burden on defendants, and resolving doubts in favor of remand, apparently relying on history as precedent. *id.* As Judge Vance explained:

> The rule that a removing party bears the burden of establishing federal jurisdiction has a significant historical pedigree. As early as 1887, the Supreme Court held that a removing defendant, as "the actor in the removal proceeding," bears the burden of establishing the existence of federal jurisdiction. From the language of these early decisions, the rule appears to be grounded in the common sense notion that the party seeking to invoke federal jurisdiction has the burden of showing that jurisdiction is proper. The courts of appeal have since consistently applied this general rule. Moreover, removal proceedings are set against the longstanding background principle that the removal statutes are to be strictly construed, which many courts have noted is intimately intertwined with issues of federalism and the limited jurisdiction of the federal courts. Although CAFA was no doubt intended to liberalize removal for cases within its scope by eliminating some of the statutory limitations on removal, there is nothing in the statute itself to suggest that Congress intended to upset the more basic, longstanding principles that underlie removal jurisdiction. In light of these considerations, it is not difficult to see why many courts are unwilling to saddle plaintiffs with the burden of negating federal jurisdiction, absent at least some indication in the statutory text to show that Congress intended CAFA to reverse the burden of proof in removal cases.

*id.* at 1638-40 (citations omitted).[7]

Moreover, the federal appellate courts which have addressed the issue have found that the historical placement of the burden on the removing party still applies to CAFA removals. See *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 676, 685 ( 9th Cir. 2006) ("Under Class

---

[7]    Foot notes 162 through 166 of Judge Vance's article itemize and explain the relevant jurisprudence supporting the proposition.

Action Fairness Act of 2005 (CAFA) the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction."); *Brill v. Countrywide Home Loans, Inc., supra,*427 F.3d at 448 ("Plaintiff who seeks remand of action removed under Class Action Fairness Act does not have burden of proving that federal jurisdiction is lacking; on motion for remand, removing defendant has burden to show federal jurisdiction."). Thus, the burden is on Humble/Exxon-Mobil to establish that federal jurisdiction exists. However, as shown above, there are numerous admissions on the state court record by Humble/Exxon-Mobile's attorneys that groups of 100 or more cases from this action cannot be tried together and, thus, under CAFA, this case was never removable. Humble has no small task in disproving the state court admissions of its attorneys.

Accordingly, plaintiffs submit that the burden of proof on remand is with the removing party, Humble.

1)    **This case is not removable under CAFA because its not a "mass action"**

Humble Incorporated removed this case as an alleged "mass action" pursuant to CAFA. See Notice of Removal, p. 3. As this case does not meet the definition of a mass action, it was not removable under 28 U.S.C. 1453 when Humble removed the case. A "mass action" is defined by 28 U.S.C. 1332(11)(B)(i) as one in which the claims of "100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact".

However, in this case, it has never been proposed, nor considered, and has been strongly argued by Exxon-Mobil that that 100 or more claims could never be tried together. Rather, it has been argued by defendants, and by the attorneys for Humble/Exxon-Mobil, that this case has too many differences of fact and law to be handled in a single, cumulated proceeding, much less that these cases could be tried together. As stated in the state court pleading signed by Humble's

attorneys, ". . . it is abundantly clear that these cases cannot be tried together." Exhibit 4, p. 9. Plaintiffs agree that all of the more than 650 cases cannot be tried together.    Humble/Exxon-Mobil's attorneys have consistently argued that these cases cannot be tried jointly in large groups, and this has been the consensus of *all defendants*.

The phrase "tried jointly" is not defined within the four corners of 28 U.S.C. 1332. Clearly, "tried" means to go to trial per common usage. "Tried", according to Black's Law Dictionary, is defined as follows:    "Trial. A judicial examination and determination of issues between parties to action, whether the issues of law or of fact, before a court that has jurisdiction."    Sixth Edition, p. 1504. "Jointly", according to Black's, is defined as:    "Joint. United; combined; undivided; done by or against two or more unitedly; shared by or between two or more; coupled together in interest or liability." *id.*, p. 837. The Black's definition accords with the notion that "tried jointly" means that the cases must be tried in one trial, e.g., 100 or more claims must be tried at one time to qualify as a "mass action".    Importantly, the Black's definition also accords with the legislative history behind 28 U.S.C. 1332(d)(11)(B)(i).  In describing  what is not a mass action, and therefore not intended to be removed, the Senate Committee stated:

> New subsection 1332(d)(11) expands federal jurisdiction over mass actions-suits that are brought on behalf of **numerous named plaintiffs who claim that their suits present common questions of law or fact that should be tried together** even though they do not seek class certification status.

S. Rep. 109-14, p. 43. (emphasis added).[8]  Plaintiffs have consistently argued that certain groups of claims in this case have sufficient commonality to be tried together.  The largest group is the one that

---

[8]        While plaintiffs do not concede that CAFA is vague as to the meaning of "tried jointly", nonetheless, the legislative history can be used when a statute is ambiguous. *Abrego Abrego, supra,* 443 F.3d at 683.

the state district court severed, the group of 26 Harvey ITCO-only plaintiffs, involving claims which are sufficiently interrelated to be tried together. Other than the Harvey ITCO -only plaintiffs, the only other suggested largest group under consideration numbered 15 claimants. Exhibit 9, ¶12.

It is in accord with Louisiana law and jurisprudence that groups of claims can be segregated for separate trials in a cumulated action. Louisiana Code of Civil Procedure Article 465 states:

> When the court is of the opinion that it would simplify the proceedings, would permit a more orderly disposition of the case, or would otherwise be in the interest of justice, any time prior to trial, it may order a separate trial of cumulated actions, even if the cumulation is proper.

The instant case had been properly cumulated by the State District Court and that cumulation has been approved by the State Appellate Court and State Supreme Court. Clearly, under Louisiana law, the cumulation of the more than 650 Lester claimants is appropriate. The cumulated actions were moving towards separate trials, as evidenced by the ITCO-Only scheduling order. Moreover, the Comeaux and Lemon cases were slated for individual trials. There has been no "proposed" joint trial of any number approaching 100 or more cases. Further, if Exxon-Mobil's contention, made by Humble's attorneys, that there are more that 700 exposure sites is applied to the reasoning of the State District court's ITCO-Only plaintiffs severance order based solely on location of exposure, the result is, possibly, hundreds of individual trials. Humble has the burden of proof to establish that 100 or more claims were proposed to be tried in a single trial. It is difficult to see how Humble can honestly make such a representation to this Court when the state court defendants, and Humble's attorneys in particular, have repeatedly asserted heretofore that these cases cannot be tried together. It is not enviable to have to argue at one end of Poydras Street (CDC) that these cases cannot be tried together, then travel just a short distance up Poydras Street (EDLA) and argue that they can and

should be tried together.

Therefore, this case does not meet the definition of a mass action is provided by 28 U.S.C. 1332(11)(B)(I), which requires that the action involve 100 or more claims which are proposed to be tried in a single trial.  Rather, this case will have to go forward with many different trials with groupings of claims that will fall far below 100, and some as single claimant trials.  Thus, as this case does not meet the statutory definition of a mass action, it is not removable under 28 U.S.C. 1453 per 28 U.S.C. 1332(d)(11)(B)(i).

**2)**     **This case is excluded as a removable class action because it has been cumulated for pre-trial proceedings only**

With its diversity of claimants, exposure and contamination locations, resulting damages and diseases, it is not possible to try all the 650 plus claims together.  Rather, this case is cumulated for pre-trial proceedings, but not for one-time single trial.  As the many claims are coordinated for pre-trial proceedings only,   this case is specifically excluded from being a removable mass action under CAFA.  28 U.S.C. 1332 (d)(11)(B)(ii).  As the statute states in relevant part: ". . . the term "mass action" shall not include any civil action in which - - . . .(IV) the claims have been consolidated or coordinated for pretrial proceedings only."  The legislative history to the 2005 amendment to 28 U.S.C. 1332 explains this point.

> If a number of individually filed cases are consolidated solely for pretrial proceedings-and not for trial-those cases have not truly been merged in a way that makes them mass actions warranting removal to federal court. On the other hand, if those same cases are consolidated exclusively for trial, or for pretrial and trial purposes, and the result is that 100 or more persons' claims will be tried jointly, those cases have been sufficiently merged to warrant removal of such a mass action to federal court.

Senate Report 109-14, pp. 47-8, Public Law 109-2, The Class Action Fairness Act of 2005.

In this case, the state court record shows that this case has more that 650 consolidated claims for pre-trial proceedings exclusively. The admissions and previous assertions of Exxon-Mobil and the other defendants show that there is no intention on their part that the 650 plus cumulated claims in this case will be tried together, or in any grouping even approaching 100 cases. Whenever trial has been proposed, the largest grouping has been the 26 ITCO-Only claims. The other groupings have been of 15 claimants, or single claimants, as with Comeaux and Lemon. Exhibit 9. Clearly, the pre-trial proceedings exception of 28 U.S.C. 1332 (d)(11)(B)(ii)(IV) applies to this case. It was not removable and should be remanded to state court.

3) **When Humble filed its Notice of Removal, this case was not removable under CAFA because no new action had been commenced**

The removal of this case by Humble Incorporated was improper under CAFA because Humble and the other diverse defendants were not yet joined as defendants in the state court action. Specifically, the state district court had set the motion for leave to file Seventh Supplemental and Amending Petition for hearing, but the motion for leave hand not been granted. Thus, the Seventh Supplemental and Amending Petition had not been fled into the record. Under Louisiana law, a supplemental pleading must be "filed" before a proceeding is commenced. La. C.C.P. Art. 421. Accordingly, as no action against Humble, nor the other new defendants had been commenced, no new removable action "commenced" as required by §9 of CAFA. See *Braud v. Transport Service Co. of Illinois*, 445 F.3d 801, 802 (5th Cir. 2006).

The question of ". . . when a lawsuit is initially 'commenced' for purposes of CAFA is determined by state law." *Braud* at 803.[9] "In Louisiana, a suit is commenced by *filing* of a pleading

---

[9]    Citing *Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 689 (9th Cir.2005); *Natale v. Pfizer, Inc.*, 424 F.3d 43, 44 (1st Cir.2005); *Plubell v. Merck & Co.*, 434 F.3d 1070, 1071-72 (8th

17

presenting the demand to a court of competent jurisdiction. La. C.C.P. Art. 421." *id.* Supplemental

pleadings which set forth items of damages or causes of action can only be filed upon motion of a

party and with permission of the court. La. C.C.P. 1155. The process by which a supplemental

pleading can be filed is described in *Roberts v. Murphy Oil*:

> Once an answer is served, a plaintiff may amend his petition only by
> leave of court or written consent of the adverse party. LSA-C.C.P. art.
> 1151. The court may permit the plaintiff to file a supplemental petition
> on motion, upon reasonable notice and upon such terms as are just.
> LSA-C.C.P. art. 1155. A party seeking to supplement a pleading must
> proceed by contradictory motion served on the opposing party by the
> sheriff. The moving party may not proceed ex parte. *Wallace v.
> Hanover Co. of New York*, 164 So.2d 111, 119 (La.App. 1st Cir.1964)
> *writ refused*, 165 So.2d 486 (La.1964). The district court has broad
> discretion in ruling on such motions. Its decision to grant or deny the
> motion should not be disturbed absent an abuse of discretion. *Royer v.
> St. Paul Fire & Marine Ins. Co.*, 502 So.2d 232 (La.App. 3rd 1987)
> writ denied, 503 So.2d 496 (La.1987).

*Roberts*, 577 So.2d 308, 313 (La. App. 4th Cir.1991).

In the instant case, the original pleadings had been filed and defendants had answered.

Further, the Motion for Leave to  file the Seventh Supplemental and Amending Petition was

opposed. Exhibit 9, ¶4. If it were not opposed, the supplemental petition would have been filed *ex

parte* and not noticed for hearing.   Accordingly, it was set as a contradictory motion to be heard on

December 1, 2006. Exhibit 3. The motion for leave was not yet granted, thus the supplemental

petition naming Humble was never "filed" per La. C.C.P. 1155. As the supplemental petition was

never filed because no leave was given, the proceeding against Humble was ***never commenced*** per

La. C.C.P. Art. 421 ("A civil action . . . is commenced by the filing of a pleading . . . ."). Thus, at

---

Cir.2006); *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090 (10th Cir.2005); *Knudsen v. Liberty
Mut. Ins. Co.* (" Knudsen I"), 411 F.3d 805 (7th Cir.2005).

the time of removal, no action against Humble had been **commenced** and, therefore, there was no new action which could be removed under CAFA. Thus, removal by Humble was improper. This case should be remanded.

### 4)    CAFA violates the 10th Amendment by taking powers reserved to Louisiana

It was believed by the Senate Committee critics of CAFA, that the law violates federalism guarantees of the 10th Amendment of the U.S. Constitution.[10]  S. Rep. 109-14, *92.  As the committee stated, the effect of CAFA "would be to move virtually all class action litigation into the Federal  courts, thereby offending well-established principles of Federalism . . . ." *id*.  CAFA's transfer of jurisdiction from state to federal courts "in cases raising questions of state law will inappropriately usurp the primary role of state courts in developing their own state tort and contract laws, and will impair their ability to establish consistent interpretations of those laws." *id*.  The senate committee critics further warned that CAFA "unilaterally strips the state courts of their ability to use the class action procedural device to resolve state law disputes." *id*.

A review of CAFA's federal jurisdiction expanding language shows this point.  CAFA sets out two situations in which a removed case where there is subject matter jurisdiction can be remanded.  First, 28 U.S.C. 1332(d)(3) sets out when a district court  "may" decline to exercise subject matter jurisdiction.  Second, 28 U.S.C. 1332(4) sets out when a district court "shall" decline to exercise subject matter jurisdiction.

A district court may decline jurisdiction when between 1/3rd and 2/3rd of the parties and "principal defendants" are citizens of the forum state.   28 U.S.C. 1332(d)(3).  Additionally,  28

---

[10]    The critics were Senators Patrick J. Leahy, Edward M. Kennedy, Joseph R. Biden, Russell D. Feingold and Richard J. Durbin. S. Rep. 109-14, *95.

U.S.C. 1332(d)(3) sets out another 6 factors for the district court's "consideration" of whether to retain jurisdiction. Apparently, application of the 6 factors is discretionary as they are only for the district court's "consideration". On the other hand, 28 U.S.C. 1332(4) sets out when a district court must decline to exercise its jurisdiction. Decline of jurisdiction is mandatory when: (1) more than 2/3rds of the plaintiffs, (2) at least one of the principal defendants is from the forum state, (3) principal injuries to plaintiffs occurred in the forum state, and (4) during the 3 year period preceding filing of the removed class action no other class action asserting the same facts against the same defendants has been filed, **or** 2/3rds or more of the plaintiffs and principal defendants are citizens of the form state.

Thus, for example, a mass action case with 100 domestic plaintiffs against 9 domestic and 1 foreign defendants cannot be remanded as a matter of discretion because there are **too many domestic plaintiffs** per 28 U.S.C. 1332(d)(3), no matter how much the 6 factors for consideration weigh in favor of declining jurisdiction.[11] This is so even if all of the tortious conduct and all of the resulting damages occurred in the forum and the only law to be applied is that of the forum state. It is possible that 28 U.S.C. 1332(4) would require a remand under these facts. However, if there were another action with 100 domestic plaintiffs filed for the same tortious conduct against the same 10 defendants one day earlier, then the case would not qualify for mandatory remand. Thus, cases involving hundreds of domestic plaintiffs against dozens of domestic plaintiffs and one foreign defendant could be taken from state court under CAFA. This is broadening of federal jurisdiction impinges on federalist principles and the state court's primacy in interpreting state law.

---

[11]    The case at bar does not qualify for such a discretionary remand because it has too many Louisiana plaintiffs. Ironically, this case is too Louisiana to qualify for a discretionary remand to Louisiana state court.

In the instant case, the interference with state sovereignty also occurs. This case has been pending in Louisiana state court for nearly four years. This case has more than 650 plaintiffs of which over 90% are Louisiana citizens. Exhibit 9, ¶4. Over 90% of the claims involve exposures and injuries occurring in Louisiana. *id.* Over 90% of the cases involve the application of Louisiana substantive law. *id.* However, as these cases have been cumulated for pre-trial proceedings only, conflicts of law analysis will provide the law to be used in cases where another state' law may apply, as each case is to be tried separately, or in small groups likely based on the same *locus* of exposure. Thus, if Humble's removal is sustained, Louisiana courts will be deprived in applying and interpreting Louisiana law in this case. This impedes on the 10th Amendment's reservations of rights to Louisiana.

Plaintiffs submit that CAFA's statutory language and its legislative history do not permit removal of the instant case. That notwithstanding, the operation of CAFA does impermissibly take from the state courts the ability to apply and interpret state law. This violates the 10th Amendment. Thus, CAFA is unconstitutional.

## 5) <u>Sanctions for frivolous removal should be imposed on Humble Incorporated</u>

As shown above, there have been numerous admissions by the parties, and Humble's attorneys in particular, that the claims in this case cannot be "tried jointly" in groups of 100 or more. The removal of this case under CAFA implicitly required Humble to represent to this Court that 100 or more claims could be tried jointly. Thus, the removal was done in violation of admissions made to the state court and violates Fed. R. Civ. Pro. 11(b)(3). Plaintiffs submit that Humble "...lacked an objectively reasonable basis for seeking removal.." *Martin v. Franklin Capital Corp.*, 126 S.Ct.

704, 163 L.Ed.2d 547 (2005); 28 U.S.C. 1447(c).  Plaintiffs will make a separate motion for

sanctions.


Respectfully submitted,


_____
**JEREMIAH A. SPRAGUE, No. 24885**
**jerry@falconlaw.com**
**TIMOTHY J. FALCON, No. 16909, TA**
**tim@falconlaw.com**
**Falcon Law Firm**
**5044 Lapalco Boulevard**
**Marrero, LA  70072**
**Ph. (504) 341-1234**
**Fax (504)341-8115**

**and**

**FRANK M. BUCK, No.16836**
**bucklaw@networktel.net**
**757 St. Charles Avenue, Suite 200**
**New Orleans, LA.  70131**
**Ph. (504) 522-2825**